**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1070**

BRISTOL SPRINGS CUSTOM HOMES, LLC,

Plaintiff - Appellant,

v.

ARGO GROUP US, INC.; COLONY INSURANCE CO.,

Defendants - Appellees.

**No. 25-1103**

BRISTOL SPRINGS CUSTOM HOMES, LLC,

Plaintiff - Appellee,

v.

ARGO GROUP US, INC.; COLONY INSURANCE CO.,

Defendants - Appellants.

Appeals from the United States District Court for the Northern District of West Virginia, at Martinsburg. Gina M. Groh, District Judge.  (3:23-cv-00246-GMG-RWT)

Argued:  May 6, 2026                                    Decided:  July 24, 2026

Before WYNN, Circuit Judge, FLOYD, Senior Circuit Judge, and Adam B. ABELSON, United States District Judge for the District of Maryland, sitting by designation.

_____

No. 25-1070 affirmed and No. 25-1103 dismissed by unpublished per curiam opinion.

_____

**ARGUED:** George Nico Sidiropolis, THE INJURY RIGHTS LAW FIRM, PLLC, Wheeling, West Virginia, for Appellant/Cross-Appellee.  Jack Roy Reiter, GRAYROBINSON, P.A., Miami, Florida, for Appellees/Cross-Appellants.  **ON BRIEF:** Aaron C. Amore, AMORE LAW, PLLC, Charles Town, West Virginia, for Appellant/Cross-Appellee.  Sydney Feldman D'Angelo, GRAYROBINSON, P.A., Miami, Florida, for Appellees/Cross-Appellants.

_____

2

PER CURIAM:

Appellant Bristol Springs Custom Homes, LLC (Bristol) sued its insurance carrier, Appellee Colony Insurance Co. (Colony or CIC), and Colony's claims administrator, Appellee Argo Group US, Inc. (together, "Defendants"), for breach of contract as well as statutory and common law bad faith. Bristol alleges that Colony acted unreasonably towards a claim made against Bristol under its third-party general liability insurance policy, which Bristol says forced it into bankruptcy. The district court granted summary judgment to Defendants on all claims. We affirm in full.

I.

This case originated out of a lawsuit between Bristol and its customers, the Ritters. Bristol performed construction work for the Ritters, who later sued Bristol for substandard and defective work. Bristol countersued for breach of contract and unjust enrichment, seeking $100,000. Bristol promptly notified Colony of the Ritter suit, believing that its commercial general liability insurance policy would cover the Ritters' claim.

As required under the policy, Colony retained defense counsel, Nathan Marinkovich, to represent Bristol in the Ritter suit. However, in his initial assessment of the case, Marinkovich determined that not all of the Ritters' allegations qualified for coverage under the insurance policy. Thus, Colony informed Bristol that it would "defend Bristol under a complete reservation of rights," meaning that Colony reserved the right under the insurance policy to deny coverage should the Ritters prevail in their suit. J.A. 172.

3

Marinkovich engaged in pre-trial mediation with the Ritters. The Ritters initially demanded $450,000, but lowered to $150,000, contingent on dismissal of Bristol's counterclaim. Bristol refused to do so, and the mediation ended without a settlement. The Ritters ultimately prevailed: on October 11, 2023, a jury awarded them $325,000 and rejected Bristol's counterclaims.

On October 19, Bristol informed Colony that it was willing to forgo appeal of its counterclaim to reach a negotiated resolution with the Ritters.[1] On November 2, the Ritters responded to a settlement offer with a demand of $391,167, contingent on Bristol's withdrawal of its post-trial motion and waiver of its appeal rights.

At some point, Bristol engaged a bankruptcy attorney, Aaron Amore. On November 6, Colony told Amore it had made a settlement offer of $150,000. Amore responded the same day:

> I take the position that the insurance company is free to resolve the matter with its own funds, especially since the funds are directly related to the only claimed unsecured debt in the case. However, the ability to offset the counter-claims of $100k or to pursue the appeal rights are no longer within your purview and are now assets and rights of the Debtor in bankruptcy.

J.A. 255. Also on November 6, Bristol petitioned for bankruptcy. As a result, Colony was divested of its authority to waive Bristol's appeal rights as to Bristol's counterclaim without approval from the bankruptcy court. On November 13, Bristol filed its complaint against Defendants for breach of contract as well as statutory and common law bad faith, making

---

[1] While Colony continued negotiations with the Ritters, Bristol filed its post-trial motion on October 30 to preserve its appeal rights.

4

its common law claim under *Hayseeds v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986).

Also on November 13, Colony wrote to Amore, expressing concern about the impact of the bankruptcy petition on negotiations with the Ritters: "Again, plaintiffs' counsel has made clear that any resolution would release all claims along with foregoing [sic] post trial motions and appeal rights. **As such, please advise on your position on how negotiations could proceed at this point**." J.A. 267. On November 15, Bristol wrote to Defendants asking to confirm they were denying coverage but not addressing the status of negotiations with the Ritters or how to continue negotiating in light of the bankruptcy filing. On November 22, Colony wrote to Bristol, saying, "CIC repeats its request for Bristol Springs to resume cooperating with CIC's efforts to resolve the underlying *Ritter* action." J.A. 271. Colony further noted that Amore's November 6 email "effectively shut down CIC's efforts to resolve the claims against its insured because plaintiffs' counsel requires a standard release of claims, which necessarily includes foregoing [sic] appeal of the judgment" and emphasized that "**CIC remains willing to negotiate and fund a reasonable settlement to resolve the underlying claims. And, again, we request your input on how that can be accomplished given the bankruptcy action and plaintiffs' requirement that all claims be released.**" J.A. 272, 274.

On December 24, 2023, the Ritters made a settlement demand of $385,000, still contingent on Bristol abandoning its post-trial motion and appeal. Colony made an offer of $250,000 on January 16, which the Ritters rejected on February 18. On February 27,

Colony agreed to pay the $385,000 subject to approval by the Bankruptcy Court. The Bankruptcy Court approved the settlement, which was fully executed on May 13, 2024.

Following resolution of the Ritter matter, Bristol continued this case against Defendants. Ultimately, the district court denied Bristol's initial and renewed motions for summary judgment and granted Defendants' motion for summary judgment on all claims. This appeal follows. Bristol appeals the district court's order granting judgment to Defendants on Bristol's claims for *Hayseeds* damages and statutory bad faith. Defendants cross appeal the district court's finding that the *Hayseeds* doctrine applies to the instant case.

## II.

We review the district court's decision on summary judgment *de novo*. *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe all facts and make reasonable inferences in favor of the nonmovant. *Bandy*, 59 F.4th at 709. But "[t]he mere existence of a scintilla of evidence," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), or "conclusory allegations or denials, without more," *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020), are insufficient to defeat summary judgment.

III.

We first address Bristol Springs's *Hayseeds* claim and affirm the decision of the district court.  Accordingly, we do not reach the question raised in Defendants' cross appeal, whether *Hayseeds* damages are available for a third-party insurance claim.[2]  Next, we address Bristol's statutory bad faith claim and affirm the judgment granted to Defendants.

A.

Bristol contends that it is entitled to *Hayseeds* damages because Defendants "offered insignificant amounts for settlement despite the known risk that a verdict would bankrupt [Bristol] and an actual rendering of [such] a verdict."  Opening Br. at 18.  In *Hayseeds*, the Supreme Court of Appeals of West Virginia (SCAWV) held that "[w]henever a policyholder substantially prevails in a property damage suit[3] against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience."  Syl. Pt. 1, 352 S.E.2d at 80.  An insured

---

[2] Even though we need not reach the cross appeal substantively, we nonetheless dismiss the cross appeal as "unnecessary and not properly taken."  *al-Suyid v. Hifter*, 139 F.4th 368, 373 (4th Cir. 2025) (citation modified).  Cross appeals must be dismissed when they "merely seek affirmance of a favorable judgment on alternative grounds," which is the case here.  *Id.* (citation modified).

[3] In later cases, the SCAWV "extended the right of recovery of costs and expenses provided in *Hayseeds* to include underinsurance claims, and by implication, to all other first party insurance claims."  *Hadorn v. Shea*, 456 S.E.2d 194, 196 (W. Va. 1995).

"substantially prevails" when the action against its insurer is resolved, either by settlement or court judgment, "for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action" and when "the [insured's] attorney's services were necessary to obtain payment of the insurance proceeds." Syl. Pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647, 652 (W. Va. 1990). Here, the dispute is over the latter factor, the necessity of Bristol's attorney's services. We agree with the district court that the record here does not support necessity.

To establish necessity, "the insured must show more than *post hoc, ergo propter hoc*." *Id.* at 652. It is not enough that the parties merely settled after suit was filed; "the insured must show that but for his or her attorney's services such settlement would not have been reached." *Id.* The SCAWV found this requirement satisfied in *Jordan* because "the insurer refused to offer any amount, much less a reasonable amount, until after the appellants' attorney was retained, the action was filed and about seventeen months had passed since the loss had been incurred." *Id.*

In *Hadorn v. Shea*, 456 S.E.2d 194 (W. Va. 1995), the SCAWV provided additional color on the necessity inquiry. In that case, a personal injury action, Hadorn demanded $300,000. *Id.* at 196. The insurer, State Farm, offered $15,000 in response, which Hadorn rejected. *Id.* The following month, State Farm offered $22,500, which Hadorn also rejected. *Id.* She did not reduce her demand after either offer by State Farm. *Id.* Following trial, the jury awarded her $90,000; thereafter, she pursued *Hayseeds* damages. *Id.* The SCAWV held that the plaintiff did not establish that "'but for' Ms. Hadorn's attorney's services she would not have been able to get State Farm to settle for $90,000 without

8

proceeding to trial," observing "[i]t takes two to negotiate." *Id.* at 198. In that case, the court said "[t]here may have been no need for a trial, if Ms. Hadorn had engaged in active settlement negotiations with State Farm." *Id.* at 199.

Here, the record also fails to establish that but for Bristol's attorney's services, Colony would not have settled with the Ritters. Pre-trial, Bristol's refusal to drop its counterclaim is analogous to Hadorn's refusal to lower her demand from $300,000. *Cf. id.* at 196 (noting "Hadorn stood by her original demand of $300,000" but the jury awarded only $90,000). Post-trial, Bristol's bankruptcy filing complicated settlement negotiations, requiring approval of the bankruptcy court for the release of Bristol's appeal rights. Furthermore, after filing for bankruptcy, Bristol failed to reply to Colony's repeated attempts to confer on how to proceed with negotiations. Bristol does not dispute this fact, instead arguing that in light of Colony's position "minimal or no coverage existed under the policy[,] . . . making a demand that the judgment be paid in full . . . futile." Opening Br. at 18. But *Hadorn* does not support futility as an excuse for an insured's failure to make a demand or meaningfully engage with the insurer.

In sum, these facts establish that summary judgment was appropriate because "no reasonable jury could find" in Bristol's favor. *See Morrison v. County of Fairfax*, 826 F.3d 758, 765 (4th Cir. 2016). The only fact supporting Bristol's *Hayseeds* theory is that Colony increased its settlement offers after Bristol filed its complaint. Bristol must "show more than the fact that a settlement for all or substantially all of the claim was reached after the action was brought against the insurer." *See Jordan*, 393 S.E.2d at 652. Nonetheless, making all inferences in Bristol's favor, there may be a close question as to whether

9

Bristol's filing of the lawsuit at least accelerated Colony's willingness to settle for the amount demanded by the Ritters. But critically, Bristol failed to engage in settlement negotiations once it filed for bankruptcy, declining to respond to Colony's requests for discussion. *See Hadorn*, 456 S.E.2d at 198–99.

Indeed, it is not clear from the record that Bristol ever made a demand of any kind—its letters do not ask Colony to increase settlement offers or accept the Ritters' demands. The closest Bristol comes to such a demand is on January 14, 2024, when its counsel wrote to Colony, "We remain hopeful that [Defendants] will agree to pay what is owed to the Ritter family and resolve the unpaid judgment that has bankrupt Bristol Springs Custom Homes, LLC." J.A. 495. Absent evidence of any real demand in the record, there is no basis from which to conclude that Colony failed to meet an obligation to Bristol. *Cf. Miller v. Fluharty*, 500 S.E.2d 310, 321 (W. Va. 1997) ("If the policyholder makes a reasonable demand during the course of the negotiations," the insurer "must either meet that demand, or promptly respond to the policyholder" explaining "why such a demand is not supported."). Thus, we affirm the judgment of the district court as to Bristol's *Hayseeds* claim.

## B.

In addition to seeking *Hayseeds* damages, Bristol brought statutory bad faith claims under the West Virginia Unfair Trade Practices Act, codified at West Virginia Code § 33-11-4(9), alleging that Defendants violated statutory subsections (b), (c), (d), (f), (g), and (m). The district court held that Bristol's claims as to subsections (b), (c), (d), (f), and (g)

fail as a matter of law following from SCAWV cases limiting these subsections to claims by third parties attempting to recover money from the insured, but excluding claims by the insured against the insurer. *Bristol Springs Custom Homes, LLC v. Argo Grp. US, Inc.*, No. 3:23-CV-246, 2024 WL 5453237, at *3 (N.D. W. Va. Dec. 19, 2024) (citing *State ex rel. State Auto Prop. Ins. Cos. v. Stucky*, 806 S.E.2d 160 (W. Va. 2017); *State ex rel. W. Va. Mut. Ins. Co. v. Salango*, 866 S.E.2d 74 (W. Va. 2021)). The district court further held that these cases apply to subsection (m), which uses the same relevant statutory language as the other subsections. *Id.* We affirm the reasoning and judgment of the district court as to these claims.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed, and the cross appeal is dismissed.

*No. 25-1070, AFFIRMED;*
*No. 25-1103, DISMISSED*

11